United States Court of Appeals,

Eleventh Circuit.

No. 97-4024.

Debra A. BRADDY, Plaintiff-Appellee,

v.

FLORIDA DEPARTMENT OF LABOR AND EMPLOYMENT SECURITY, Douglas Jamerson, Secretary of Labor, Robert Lynch, in his individual capacity, E. Kathryn Davis, in her individual capacity, Defendants-Appellants.

Jan. 21, 1998.

Appeals from the United States District Court for the Southern District of Florida. (No. 95-2033-CIV-JAL), Joan A. Lenard, Judge.

Before DUBINA, Circuit Judge, and FAY and KEITH[*], Senior Circuit Judges.

FAY, Senior Circuit Judge:

In this civil rights action brought by Debra Braddy, defendants Robert Lynch and E. Kathryn Davis appeal the district court's denial of their motion for summary judgment based on qualified immunity. In finding Lynch ineligible for qualified immunity and Davis deserving of qualified immunity, we affirm in part and reverse in part.

I. BACKGROUND

Debra "Dane" Braddy, a former unemployment compensation appeals referee for the Florida Department of Labor ("DOL"), alleges that while she was employed as an appeals referee for the DOL, defendants Lynch and Davis violated her Fourteenth Amendment Equal Protection right to be free from intentional discrimination in the workplace based on race and sex. The record on appeal before this court is replete with conflicting evidence. This is, however, an appeal from a

---

[*]Honorable Damon Jerome Keith, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

denial of summary judgment, and, accordingly, we will draw all reasonable inferences from the record evidence in the light most favorable to the nonmoving party. *See Greason v. Kemp,* 891 F.2d 829, 831 (11th Cir.1990). Additionally, this court will not make credibility determinations and we will accept the evidence of the nonmoving party for purposes of summary judgment. *See Mize v. Jefferson City Bd. of Educ.,* 93 F.3d 739, 742 (11th Cir.1996). With these tenets in mind, the record reveals the following.

From March 1, 1994 until January 3, 1995, the DOL employed Debra A. Braddy, a black female, as an unemployment compensation appeals referee. From March 1, 1994 to June 20, 1994, Davis supervised Braddy in the performance of her duties as an appeals referee. On June 21, 1994, the DOL placed Lynch in the position of Braddy's immediate supervisor, and Davis became Lynch's supervisor. On October 13, 1994, Braddy requested a transfer to the Fort Lauderdale office of the DOL. On that same day, Braddy filed a complaint with the Equal Employment Opportunity Commission, alleging discrimination in the workplace based on race and sex. Braddy's transfer was approved and on October 18, 1994, Braddy reported to the Fort Lauderdale office where she was under the supervision of Bill Robinson, a black male.[1] On December 27, 1994, while on unpaid leave from the DOL, Braddy began her employment with the Dade County government.[2] On December 29, 1994, Braddy submitted a written resignation to the DOL, stating that her resignation would be effective January 3, 1995. The incidents which form the basis of Braddy's sexual harassment and race discrimination claims occurred after Lynch began supervising Braddy. Given that a more detailed chronology is impossible because Braddy cannot recall the dates on which the

---

[1]Braddy maintained the same salary, job title, duties and benefits in the Fort Lauderdale office that she had in the Miami office.

[2]It is unclear from the record in what capacity Braddy was employed by the Dade County government.

various incidents of harassment occurred, we will now recount the relevant facts associated with Lynch and Davis.

A. Defendant Lynch

In her affidavit and by her deposition testimony, Braddy offered evidence that Lynch discriminated against her and harassed her in the workplace on a number of occasions. Braddy offered evidence of the following acts:

(a) Braddy testified that Lynch ran behind her with a bull whip and exclaimed, "This is my sexual fantasy for you." Braddy found this incident to be both sexually and racially offensive.[3]

(b) On a separate occasion, Lynch told Braddy that watching the movie "Posse" made him want to "kick some black ass."

(c) When Braddy inquired of Lynch regarding her transfer from the Miami office to the Fort Lauderdale office of the DOL, Lynch replied that such a move would be good, "because I am so sexually attracted to you that I can't work without having you."

(d) During the course of her employ with Lynch as a supervisor, Lynch struck Braddy on the rear end with file folders and made other sexual advances.

(e) Lynch arranged the stuffed animals on the desk in his office so that they appeared to be copulating.

(f) Lynch displayed photographs in his office of women wearing revealing swimsuits.

(g) On one occasion, Lynch spoke to Braddy about his wife, his wife's two lesbian friends, and "porno" queens.

(h) Prior to Braddy's employment with the DOL, Lynch hired a male stripper for an office party.

(i) Lynch denied Braddy compensatory time in retaliation of her rejection of Lynch's sexual advances.[4]

---

[3]This incident occurred on Friday, October 1, 1994. Braddy was unable to recall the specific dates for the other incidents of alleged harassment.

[4]In her affidavit filed with the Equal Employment Opportunity Commission, Brady testifies that while she was denied compensatory time, other similarly situated white appeals referees

Lynch disputes that any of these incidents occurred as Braddy has stated, but for the purposes of this opinion we will assume Braddy's testimony to be both accurate and truthful.

B. Defendant Davis

There is evidence in the record that Davis was aware of at least some acts of harassment by Lynch. Braddy told Davis about her problems with Lynch, specifically reporting the incident with the whip, on Monday, October 4, 1994. Davis was not at work on October 1 when the incident occurred because Davis did not work on Fridays.[5] On October 4, 1994, Davis held a meeting with Lynch and Braddy to discuss what had transpired.[6] After listening to Braddy's complaints, Davis responded by telling Braddy that she would have "Maggie" Magaly Armernteros, the owner of the whip, remove the whip from the premises.[7] After the meeting, Braddy left the following message with Robert Whaley, Director of the Unemployment Appeals Compensation Bureau:

> Hi, Robert, this is Dane [Braddy]. I had my meeting with Kitty [Davis] and Bob [Lynch] and I'm quite satisfied with how it went ... Absolutely no negative feedback. And I really—I think it's going to work itself out quite nicely and that way we can continue to work as a team here. At least that's what I'm hoping.

Braddy testified by affidavit that the reason she left such a message was because she feared she would suffer retaliation by Lynch and Davis should Whaley conduct an investigation.[8] Despite

were granted compensatory time by Lynch.

[5]Braddy testifies in her deposition that Lynch was at his worst when Davis was absent from work.

[6]According to the deposition of testimony of Braddy, "the subject of the meeting was that I was fed up with Bob [Lynch]."

[7]Armenteros was the Deputy Clerk responsible for collecting the referees decisions. In 1992 she was given the whip by an employee who teasingly called her a "slave driver" because of the manner in which she would badger the referees to get their opinions in on time.

[8]While it is unclear from the record when the conversation took place, sometime before the meeting with Davis and Lynch Braddy contacted Whaley to register her complaints about Lynch. Whaley told her he would be in Miami on a scheduled visit and would investigate the matter

Braddy's message, Whaley came to the Miami DOL office and investigated Braddy's earlier complaint. During his visit, Braddy testified that Lynch and Davis subjected her to angry stares.

On another occasion, in Davis's presence, Lynch said to Braddy, "Oh Dane, you look sexy." When Braddy immediately pointed out to Davis that her outfit was not sexy, but was in fact bland, Davis replied that maybe the outfit was sexy to him.[9] Braddy also testified in her affidavit that after her transfer to the Fort Lauderdale office, which Davis also supervised, Davis made more frequent trips to the Fort Lauderdale office,[10] and that Davis subjected Braddy to "harsh and constant criticism" and often refused to help her with the questions she had. Braddy feared that the increased number of visits indicated that she would be subject to retaliation by Davis.

C. Procedural History

Braddy brought this suit against Douglas Jamerson, in his official capacity as Florida Secretary of Labor, and against her former supervisors, Lynch and Davis, in their individual capacities. In her complaint, Braddy alleges against Jamerson one count of sexual harassment and racial discrimination in the workplace in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e to 2000e-17. Against Lynch and Davis, Braddy alleges her former supervisors violated 42 U.S.C. § 1983 by intentionally discriminating against her on the basis of race and sex in violation of her equal protection rights as secured by the Fourteenth Amendment. The defendants filed separate motions for summary judgment and the district court denied each of their motions.

---

upon his arrival.

[9]In Braddy's deposition, Braddy testified to the following exchange: "And I said, Kitty [Davis], see what I mean. This is not a sexy outfit. I am really sick of him. And she looks at him and says, well, different people have different standards, Dane, maybe it's sexy to him."

[10]Davis contends, and the deposition of Braddy supports, that Davis made the weekly trips (rather than monthly) to Fort Lauderdale to train a new employee there.

Defendants Lynch and Davis appeal the district court's order to the extent it determines that they are not entitled to qualified immunity.[11]

## II. DISCUSSION

A district court's summary judgment denying qualified immunity can be appealed immediately. *Madiwale v. Savaiko,* 117 F.3d 1321, 1323—1324 (11th Cir.1997). We review the denial of qualified immunity *de novo* and apply the same standards as those controlling the district court. *Adams v. Poag,* 61 F.3d 1537, 1542 (11th Cir.1995). The moving party is entitled to summary judgment only if, when taking the facts in the light most favorable to the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Mize,* 93 F.3d at 742.

In determining whether or not a state official is entitled to qualified immunity, our analysis turns on whether the state official, in the exercise of his or her discretionary authority, violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). When state officials are sued in their individual capacities, the application of qualified immunity to their actions is the rule rather than the exception, and "only in exceptional cases will government actors have no shield against claims made against them in their *individual capacities.*" *Lassiter v. Alabama A & M Univ.,* 28 F.3d 1146, 1149 (11th Cir.1994) (en banc) (emphasis in original). Since the conduct of Davis at issue is markedly dissimilar from the conduct of Lynch at issue, we analyze whether Davis and Lynch are entitled to qualified immunity separately.

A. Defendant Davis

Braddy contends that she had a clearly established right to be free from sexual harassment

---

[11]Secretary of Labor Jamerson is not a party to this appeal.

and racial discrimination in the workplace, and that since Davis's actions violated or infringed upon these rights, she is not entitled to the protection of qualified immunity. We disagree. Assuming it is true that Braddy was entitled under the Equal Protection Clause to be free from sexual harassment and racial discrimination while an employee of the DOL, she must show more than that to eliminate the shelter qualified immunity provides for Davis in the exercise of her discretionary authority. Rather, Braddy must show that when Davis acted as she did, "the law was developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that "what he [she] is doing' violates federal law." *Jones v. City of Dothan, Ala.,* 121 F.3d 1456, 1459 (11th Cir.1997) (citations omitted). Accordingly, we must carefully review exactly what Davis's actions were in order to determine if it was or should have been obvious to her that what she was doing was in violation of federal law. We conclude that it was not.

For Davis, as Lynch's supervisor, to be liable under § 1983, her liability must be based on something more than the theory of respondeat superior. *Brown v. Crawford,* 906 F.2d 667, 671 (11th Cir.1990); *McLaughlin v. City of LaGrange,* 662 F.2d 1385, 1388 (11th Cir.1981). As articulated in *Brown:*

> Supervisor liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he [she] fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences.

906 F.2d at 671 (citations omitted).

Braddy argues that by her conduct, Davis actively participated in and impliedly authorized the harassment against her. The record does not support this contention. Other than testimony regarding angry stares, more frequent trips by Davis to the Fort Lauderdale DOL office, and often

critical review by Davis of Braddy in Fort Lauderdale, there is nothing in the record that remotely indicates that Davis personally participated in the sexual harassment and racial discrimination that form the basis of Braddy's § 1983 suit. These allegations by Braddy, the angry stares, the more frequent trips, and the increased criticism by Davis of Braddy, do not violate federal employment laws and certainly are insufficient to rise to the level to divest Davis of the qualified immunity to which she is otherwise entitled.[12]

The more difficult question is whether a causal connection exists between Davis's supervision of Lynch and the constitutional violation as alleged by Braddy. The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous. The causal connection between Lynch's offensive behavior and Davis's liability as his supervisor for such behavior can only be established if the harassment was sufficiently widespread so as to put Davis on notice of the need to act and she failed to do so. A few isolated instances of harassment will not suffice, the "deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration." *Brown,* 906 F.2d at 671. After careful review of the record, we conclude that while Davis's response to Braddy's complaints may not have been optimal, it was not constitutionally inadequate for purposes of qualified immunity.

In response to Braddy's complaints, on October 4, 1994, Davis held a meeting with Braddy and Lynch and gave Braddy the opportunity to air her complaints about Lynch. As a result of the meeting, Davis directed that the offending whip be removed from the office. After the meeting, Braddy telephoned Whaley, Davis's supervisor, and left a message on his voice mail indicating that

---

[12]"Unless a government agent's act is so obviously wrong, in the light of preexisting law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." *Lassiter,* 28 F.3d at 1149.

the problems in the Miami office had been resolved. Despite Braddy's claims that she left the message because she feared a possible reprisal should Whaley investigate, an objective recipient of this message could very well reasonably conclude that indeed the problems had been resolved in the Miami office. Additionally, this court notes with interest that Lynch's behavior was at its worst when Davis was out of the office. Certainly Davis could have done more to discipline Lynch, but the question is whether her response to the situation was constitutionally inadequate. In balancing Lynch's behavior, Davis's notice of Lynch's conduct, and Davis's response to Lynch's behavior, this court cannot conclude that Davis should have known that her acts against Braddy were obviously unlawful. *See Lassiter,* 28 F.3d at 1149. Accordingly, we reverse the order of the district court with respect to Davis's motion for summary judgment based on her qualified immunity as an officer of the state.

B. Defendant Lynch

While the question of whether Davis is entitled to qualified immunity may be a close one, we do not hesitate to determine that Lynch's conduct pushed him from beneath the protective umbrella of qualified immunity. If a jury believes Braddy's allegations, including the allegation that Lynch followed Braddy down an office hall, bull whip in hand, and said "this is my sexual fantasy for you," then a jury could very reasonably find that Lynch's behavior was clearly and obviously in violation of existing federal law. Accordingly, we affirm the district court's order denying Lynch's motion for summary judgment based on qualified immunity.

### III. CONCLUSION

For the foregoing reasons, the order of the district court is reversed in part and affirmed in part.

REVERSED IN PART and AFFIRMED IN PART.