Fred L. GONSER, Plaintiff

v.

TWIGGS COUNTY, et al., Defendants

No. 5:00–CV–573–2(WDO).

United States District Court,
M.D. Georgia,
Macon Division.

Jan. 9, 2002.

Jonathan Perry Waters, Macon, GA, for Plaintiff.

O. Hale Almand, Jr., Macon, GA, Michael A. O'Quinn, McDonough, GA, Chad D. Graddy, Timothy J. Buckley, III, Atlanta, GA, for Defendants.

## ORDER

OWENS, District Judge.

Before the Court are Defendants' Motions for Summary Judgment [Tabs 22, 27, and 30] and a Notice of Objection to Plaintiff's Exhibits 1, 4, 5, 6, and 7 filed by Defendants Twiggs County, Hamrick, and Chance [Tab 50].

## I. NOTICE OF OBJECTION

As an initial matter, the Court will address Defendants' Notice of Objection. The only objection relevant to this Order is in regard to Exhibit 1 (Plaintiff's Affidavit). These Defendants, as well as Defendants Stone and Stone [Tab 49 at 5–7], contend that Plaintiff's Affidavit, which is attached to his Response, is a "sham affidavit."

The Eleventh Circuit has explained that "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Assocs. v. U.S. Industries,* 736 F.2d 656, 657 (11th Cir.1984). If the party attempts to do so, the district court may disregard the affidavit as a "sham" and may grant summary judgment. *Id.*

Here, Plaintiff's affidavit did contradict testimony given during his deposition. *See* Gonser Dep., Vol. II at 71, 87, 91; Cf. Exhibit 1, ¶¶ 24, 33. Accordingly, his affidavit will be disregarded as a sham and will not form any part of the factual record.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff has presented various versions of what transpired to bring about this suit. Taken in the light most favorable to Plaintiff, the record reveals that, on October 17,

2000, Twiggs County held a County Board of Commissioners meeting. Plaintiff, a CPA hired by the County to conduct the 1999 audit, presented his Report at the meeting. During his presentation, Commissioner Chance became visibly upset by Plaintiff's report that Twiggs County was in good financial shape for the year. After the presentation, Chance accused Plaintiff of mouthing, "Kiss my ass" as he sat down. No one else heard or saw Plaintiff make such a response; however, Chance continued to accuse Plaintiff and said he was "unprofessional in his actions, and is unfit to be an auditor." (Adam West Affidavit, ¶ 6, Exhibit 2 to Tab 45).

When the meeting broke to go into executive session, Chance told the sheriff that Plaintiff had used profanity towards her. A city ordinance prohibits the use of profanity at the Commission meetings, so the sheriff walked up behind Plaintiff and asked him if he had used profanity. Plaintiff denied doing so. The sheriff decided to watch the video recording of the meeting, so he retrieved that tape. Because he could not hear the tape at the meeting, the sheriff took the video to his office to view, and on his way out, he told Plaintiff not to leave until he returned. He also told his deputy that Plaintiff was not to leave.

After waiting approximately twenty to thirty-five minutes, Plaintiff decided to leave anyway. When he neared the exit, the deputy, who was seated in a chair near the exit, stood and told Plaintiff the sheriff had said Plaintiff was not to leave until he (the sheriff) returned. Plaintiff asked if he was under arrest. The deputy responded again that the sheriff had said Plaintiff was not to leave until the sheriff's return. Plaintiff asked again if he was under arrest and demanded to see the sheriff. Plaintiff drove his own car to the sheriff's office, and the deputy followed him in his patrol car.

When Plaintiff arrived at the sheriff's office, he waited for twenty to thirty minutes to see the sheriff while someone watched him through a glass window. Then he and the sheriff spoke for approximately twenty to thirty minutes. Most of the conversation concerned personal matters, not what transpired at the meeting. Plaintiff left without being charged.

Plaintiff filed a § 1983 claim for violation of his Fourth, Fifth, and Fourteenth Amendment rights. He also brought a host of pendent state claims, including: (1) slander, (2) libel, (3) false imprisonment, (4) unlawful arrest, (5) intentional infliction of emotional distress, and (6) punitive damages. Defendants filed Motions for Summary Judgment, and Plaintiff filed timely Responses [Tabs 45, 46, and 48]. Defendants then filed timely Replies [Tabs 49, 51, and 52].

## III. DISCUSSION

### A. THE BOARD OF COMMISSIONERS

#### 1. In Their Official Capacity

"For liability purposes, a suit against a public official in his official capacity is considered a suit against the local government entity he represents." *Owens v. Fulton County,* 877 F.2d 947, 951 n. 5 (11th Cir.1989). When suit is also filed against the government entity, it is appropriate for the Court to dismiss the named defendants in their official capacities as "redundant and possibly confusing to the jury." *Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir.1991).

In the case at bar, Plaintiff has sued both Twiggs County and the Board of

Commissioners. Suit against the commissioners in their official capacity is duplicative of the suit against the County. Accordingly, those claims should be dismissed.

### 2. In Their Individual Capacities

 Qualified immunity protects government officials unless they violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). First, the Court must determine whether a constitutional violation occurred. *See Stanley v. City of Dalton,* 219 F.3d 1280, 1285 (11th Cir.2000). If such a violation did occur, the government official must show that he was acting within the scope of his discretionary authority; then the plaintiff must show that the law was "developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that 'what he is doing' violates federal law." *Lassiter v. Alabama A & M Univ.,* 28 F.3d 1146, 1149 (11th Cir.1994) (en banc). "[O]nly in exceptional cases will government actors have no shield against claims made against them in their *individual capacities.*" *Braddy v. Florida Dept. of Labor & Employment Security,* 133 F.3d 797, 801 (11th Cir.1998) (quoting *Lassiter,* 28 F.3d at 1149).

Here, Plaintiff alleges that he was falsely arrested/detained as a result of Chance's accusing him of using profanity towards her. Even assuming such a detention occurred, qualified immunity protects the commissioners.

It is undisputed that all the commissioners were acting within their discretionary authority because the incident occurred at a Board of Commissioners meeting. Plaintiff, therefore, must establish that the law was sufficiently developed to inform the commissioners that their actions were unconstitutional. However, the only allegation Plaintiff has made against Commissioners Hamrick, Bond, Bryant, and Watson is that they failed to stop Chance from having him arrested and that they failed to stop the sheriff from investigating the claim and allegedly arresting Plaintiff. Plaintiff has offered no case law indicating that an official's failure to act to prevent another from violating a constitutional right is itself unconstitutional. Nor has he provided case law showing that the Board of Commissioners had the authority to interfere with the sheriff's investigation. Besides, Plaintiff admitted that, other than Chance, the commissioners did not even know what was happening. *See* Gonser Dep., Vol. I at 36, 80. Therefore, Plaintiff has failed to meet his burden with respect to those commissioners.

 As for Chance, Plaintiff appears to argue that she violated his constitutional rights by directing the sheriff to arrest Plaintiff.[1] However, "[i]t is well-settled law in Georgia that a county and its commissioners are without any authority over the sheriff and his deputies." *Duffey v.*

---

1. Insofar as Plaintiff might be arguing that Plaintiff's Fourteenth Amendment Due Process rights were violated by the statements Defendant Chance made concerning his professional reputation, the Supreme Court has ruled that damage to reputation alone is insufficient to violate the Fourteenth Amendment. *See Paul v. Davis,* 424 U.S. 693, 711– 12, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). The damaging statements must be accompanied by an action, such as termination. *See id.* Here, Plaintiff was not terminated. In fact, during the executive session following the exchange between Plaintiff and Defendant Chance, Plaintiff was appointed to the County Tax Assessors' Board by a majority vote.

*Bryant,* 950 F.Supp. 1168, 1174 (M.D.Ga. 1997) (citing *Board of Comm'rs of Randolph County v. Wilson,* 260 Ga. 482, 396 S.E.2d 903 (1990)). "In Georgia, sheriffs are elected officials who possess final authority over matters of law enforcement. When the sheriff acts within the scope of his duties as chief law enforcement officer of the county, the Board is powerless to act with respect to his conduct." *Thompson v. Carter,* 905 F.Supp. 1073, 1074 (M.D.Ga.1995). Furthermore, if Chance actually believed Plaintiff had violated the County ordinance prohibiting use of profanity at a Board of Commissioners' meeting, she was not violating a constitutional right by reporting him. Because it is only in rare circumstances that a government official is not shielded by the doctrine of qualified immunity, Chance is entitled to this defense as well. *See Lassiter,* 28 F.3d at 1149.

Therefore, summary judgment on the federal claims is appropriate for the commissioners in both their official and individual capacities.

### B. Twiggs County

■■■■ Plaintiff alleges that the County is liable because (1) the Board of Commissioners did not act to protect him from false arrest and (2) the County failed to train and/or supervise its sheriff and deputies properly. A government entity may not be held liable under a theory of respondeat superior for the acts of its agents and employees unless the governmental entity itself actually caused the deprivation of a constitutional right. *See Monell v. Department of Social Servs. of the City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In the case at bar, there are two possible ways that the County could be held liable: (1) by formally adopting a policy that deprived Plaintiff of his constitutional rights or (2) by an individual representative of the County, who has final decision-making authority, acting to deprive Plaintiff of his constitutional rights.

In regard to the first possibility, the Twiggs County Board of Commissioners is the governing body of Twiggs County and, as such, establishes official policy for the County. *See* Ga. Laws 1923, p. 330, § 19; *Martinez v. City of Opa-Locka,* 971 F.2d 708, 714 (11th Cir.1992). The Board of Commissioners did adopt a policy that prohibited disruption of a public meeting. The ordinance provides that persons who become disorderly may be expelled from the meeting, but before such expulsion takes place, there must be a motion, and the motion must pass by a majority vote. Here, there was no motion made to expel Plaintiff from the meeting. While Defendant Chance did move that Plaintiff not be allowed to attend future meetings, this motion failed. Accordingly, the policy formally adopted by the Board of Commissioners was not used to deprive Plaintiff of any constitutional right.

■■■■ As for the second possibility, no one with final decision-making authority acted to deprive Plaintiff of any constitutional right. Defendant Chance is a commissioner, and the Board of Commissioners does make County policy. However, the Board cannot act without a majority vote. *See* Ga. Laws 1923, p. 330, § 19. Therefore, Defendant Chance, alone, does not have final decision-making authority. *See Mason v. Village of El Portal,* 240 F.3d 1337, 1339 (2001) (holding that, even if one council member acts with discriminatory motive, municipality not liable unless majority of members who acted did so with discriminatory motive).

Insofar as Plaintiff is arguing that the County is liable for the Board of Commissioners' failure to stop the sheriff from allegedly arresting Plaintiff or for the Board's failure to train the sheriff and his deputies, these arguments are equally lacking in merit. As stated earlier, "a county and its commissioners are without any authority over the sheriff and his deputies." *Duffey,* 950 F.Supp. at 1174. "When the sheriff acts within the scope of his duties as chief law enforcement officer of the county, the Board is powerless to act with respect to his conduct." *Thompson,* 905 F.Supp. at 1074. Accordingly, the decision to arrest a suspect and the methods of training deputies rest with the sheriff, not with the Board of Commissioners, and, thus, not with the County.

For these reasons, Defendant Twiggs County is also entitled to summary judgment.

## C. The Sheriff and Deputy

█ The same analysis used for the Board of Commissioners is applicable to these Defendants. First, any claim against them in their official capacity is redundant of the claim against the County. Second, they are also entitled to qualified immunity.

█ Plaintiff argues that these Defendants falsely arrested him, which would be a violation of his Fourth Amendment right against unlawful seizure.[2] However, an arrest—even a brief detention—is constitutionally permissible so long as it is based on an "objective justification." *See United States v. Mendenhall,* 446 U.S. 544, 551, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Moreover, "[i]n determining whether qualified immunity exists within the context of a wrongful arrest claim, the issue is not probable cause in fact but arguable probable cause." *Von Stein v. Brescher,* 904 F.2d 572, 579 (11th Cir.1990). "[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly believe that probable cause is present, and ... that in such cases those officials ... should not be held personally liable." *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

In the case at bar, Chance reported to the sheriff that Plaintiff had violated the local ordinance prohibiting profanity. Thus, the sheriff had probable cause to make an arrest. But rather than making the arrest without investigating the accusation, the sheriff asked Plaintiff not to leave the meeting until the videotape was reviewed. Even if this request could be considered a detention and, thus, a seizure,[3] the sheriff and deputy were acting within their discretionary authority, with probable cause, and are thus shielded by qualified immunity.

---

**2.** Plaintiff brought this claim only against Defendant Sheriff Stone, but the same reasoning applies to Defendant Deputy Stone.

**3.** Defendants point out that a detention occurs only if (1) the individual actually submits to a show of authority or (2) the officer applies a physical force, however slight, to the individual's body. A show of authority that does not succeed in holding the individual is not a seizure. *See California v. Hodari D,* 499 U.S. 621, 625–26, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). Here, Plaintiff had no intention of leaving the meeting even before the sheriff's request. *See* Gonser Dep., Vol. I at 46. Additionally, he did not feel restrained, as evidenced by his attempt to leave the meeting after 20–30 minutes. When the deputy told him he was to stay, he nonetheless left and went to the sheriff's office. At the sheriff's office, he had a general conversation with the sheriff and then left. It is, therefore, highly unlikely that any "seizure" occurred because Plaintiff never submitted to the sheriff's or deputy's purported authority.

Accordingly, Defendants Stone and Stone are entitled to summary judgment on the federal claims.

## IV. CONCLUSION

Defendants Hamrick, Chance, Bond, Bryant, Watson, Stone, and Stone are entitled to summary judgment in their official capacities because the suits against them are duplicative of the suit against the County. These same Defendants are entitled to summary judgment in their individual capacities because they are shielded by qualified immunity. Twiggs County is entitled to summary judgment because it cannot be held liable under a theory of respondeat superior and it had no authority over the training or arrest decisions of the sheriff's department. Any remaining state claims are dismissed without prejudice pursuant to 28 U.S.C. § 1367.