Denise MARKHAM, et al.,
Plaintiffs–Appellees,

v.

Francis E. WHITE, et al., Defendants–
Appellants.

Nos. 97–3060, 97–3086.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 17, 1998.

Decided March 31, 1999.

George F. Galland, Jr., Miner, Barnhill & Galland, Chicago, IL, for Plaintiffs–Appellees in docket No. 97–3060.

Jeffrey I. Cummings (argued), Miner, Barnhill & Galland, Chicago, IL, Sarah Siskind, Miner, Barnhill & Galland, Amy F. Scarr, Madison, WI, for Plaintiffs–Appellees.

William H. Theis (argued), Shellow, Shellow & Glynn, Milwaukee, WI, for Defendants–Appellants.

Beth J. Kushner, Milwaukee, WI, for Defendant–Appellant in docket No. 97–3060.

David P. Schippers, Schippers & Bailey, Chicago, IL, for Defendants–Appellants in docket No. 97-3086.

Before POSNER, Chief Judge, and CUMMINGS and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

This is an interlocutory appeal from the district court's decision to deny qualified immunity to a group of agents from the Drug Enforcement Administration ("DEA") in a suit claiming that the agents created a sexually hostile environment for police officer trainees, in violation of the plaintiffs' right to equal protection. Although the agents attack that decision on a number of grounds, their principal argument is that they would not have known at the time either that their behavior amounted to sexual harassment, or that the plaintiffs' right to a harassment-free environment extended to settings like the training program the DEA was conducting. We agree with the district court, however, that

the agents have not at this point satisfied the requirements for qualified immunity, and we affirm.

## I

Plaintiffs Denise Markham and Marion Morgan are police officers in the police department of the City of Madison, Wisconsin. They and many other police officers have attended training seminars conducted by the DEA that were geared to state and local narcotics officers. Among the instructors at those seminars were the five defendant DEA agents, Francis E. White, Melvin O. Schabilion, Michael Flanagan, Saul "Buddy" Weinstein, and Norbert Kuksta ("the agents"). In a complaint filed on behalf of a class of women trainees who attended these seminars, Markham and Morgan alleged that the agents created a sexually hostile atmosphere as they conducted the seminars, through acts like the following:

(1) beginning the seminar with the promise that male participants would go home that night and have aggressive sexual encounters with their wives;

(2) describing women in general as "bitches";

(3) interspersing instructional slides with pictures of nude or scantily clad women;

(4) referring in obscene terms to the United States Attorney General as a lesbian and as having a lesbian relationship with the First Lady;

(5) using sexual terms to describe law enforcement work, such as describing drug reconnaissance as "getting laid" or "getting her drunk and finding a hotel," talking about DEA agents getting "horny" if they were unable to kill people on a regular basis, talking regularly about male erections in terms such as "chubby," "woody," "johnson," and "pecker," among others;

(6) making sexual remarks to or about female participants, such as:

(a) one of the defendants, observing Markham prone on the rifle range, grabbing his genitals and yelling, "I'm getting a hard on," causing male participants to laugh;

(b) requesting the assistance of female participants during demonstrations because "[i]t's always more exciting to have a pretty girl here to look at";

(c) asking a female participant to turn sideways so that other participants could see her breasts;

(d) making repeated sexual references during demonstrations, such as asking a female participant to "use your hot little hands to get this reaction heated up"; and

(e) referring to female participants as "hon," "babe," "little girl," "blondie," and "sweet jeans."

The net result of this behavior, according to the complaint, was to create a hostile atmosphere at the training sessions that amounted to sexual harassment and a denial of equal protection. The women trainees brought their equal protection complaint as a *Bivens* action, see *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and they asserted a separate claim under 42 U.S.C. § 1985(3) for conspiracy to deny them equal protection. Because they were not DEA employees, they did not seek relief under Title VII.

In an earlier motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), the district court narrowed the case somewhat in ways not directly relevant here. Later, on January 28, 1997, the court certified under Federal Rule of Civil Procedure 23(b)(3) a class of women law enforcement personnel who since April 1993 have attended DEA training seminars at which the defendants taught and who were subject to the same type of behavior as the amended complaint described. On March 11, 1997, the agents filed their motions for summary judgment—Weinstein filed on his own, and the

remaining defendants filed jointly. In support of his motion, Weinstein also filed a statement of the undisputed facts that he believed entitled him to summary judgment, as required by Local General Rule 12(M) of the Northern District of Illinois, and the other defendants adopted Weinstein's 12(M) statement.

The defendants' motions addressed both the merits of the plaintiffs' claims and the defense of qualified immunity. The district court did not address the merits, and except insofar as they are indirectly a part of the qualified immunity argument, they are not before us at this time. With respect to qualified immunity, the district court noted a number of problems with the defendants' motions. First, the briefs in support of the motions and Weinstein's Rule 12(M) statement addressed qualified immunity only with respect to the named plaintiffs, ignoring the fact that the court had by then certified the class and had explicitly instructed the defendants to respond to the entire case. Second, Weinstein's initial Rule 12(M) statement failed to include record citations to the facts on which he was relying, in violation of the rule. After the plaintiffs pointed out this shortcoming, Weinstein filed a revised 12(M) statement that included record citations, but that deleted many of the substantive paragraphs the first had contained.

The plaintiffs then filed their response as required by Local General Rule 12(N). In this statement, they noted where they disagreed with the defendants' alleged undisputed facts and they set forth the additional facts that they believed required the denial of summary judgment. They supported their Rule 12(N) statement with citations to affidavits from both the named plaintiffs and other class members that described their observations of the defendants' conduct at the DEA seminars. They also relied upon other materials, including documents that the defendants and the Department of Justice had produced during discovery.

The district court found that all of the defendants had implicitly adopted Weinstein's revised 12(M) statement, even though they had never expressly so indicated. Nevertheless, this did not provide much help to any of the defendants, because the district court found that even the revised statement was inadequate for purposes of the qualified immunity argument. In the judge's words:

> Weinstein's Revised Local Rule 12(M) Statement consists of six numbered paragraphs (down from seventeen in the original) that identify the parties, establish this Court's jurisdiction and venue, and identify the particular DEA seminar attended by each of the named plaintiffs. Each of its paragraphs is supported only by a citation to the plaintiffs' amended complaint.
>
> Where are the facts that entitle the defendants to summary judgment on the grounds of qualified immunity? There are none in the Local Rule 12(M) Statement. Although both briefs in support of the motions for summary judgment cite repeatedly to the deposition testimony of the named plaintiffs as to their experiences with the defendants at the seminars they attended, none of that evidence found its way into the Local Rule 12(M) Statement.

Stating that it was entitled under Seventh Circuit law to require strict compliance with Local Rule 12(M), the court concluded that this was reason enough to deny the defendants' motion for summary judgment based on qualified immunity.

The court also found the defendants' motion defective in that it challenged only the individual plaintiffs' claims, even though the class was certified, the court had instructed them to address the class claims, and they never sought leave to proceed as they did. Qualified immunity, the court noted, requires a fact-specific inquiry, and the facts that the plaintiffs presented on behalf of the absent class members went well beyond the facts the defendants addressed with respect to the

named plaintiffs. Thus, the court concluded, the defendants had admitted the truth of the facts relating to the absent class members for summary judgment purposes, but they did not discuss how those facts affect their entitlement to qualified immunity.

Finally, the court found that the defendants had one argument for qualified immunity that it could reach on the merits, because it did not depend on the record. The agents argued that in 1994, when the named plaintiffs attended the DEA seminars, there was no clearly established constitutional right to be free of sexual harassment in a short-term training program (as opposed to the workplace, over a longer term). They also argued that no one would have realized that harassment outside the employer-employee context violated anyone's rights. The district court ruled that it was clear in 1993 and 1994 that male and female participants in a seminar like this one were entitled to equal treatment, and the fact that the parties did not stand in an employer-employee relationship was immaterial.

## II

### A. *The Application of Local Rule 12(M)*

We agree with the district court that the defendants' failure to support their motions for summary judgment with particular citations to the record doomed most of the grounds on which they might have supported their claim of qualified immunity. In this connection, we pause to note with distress that attorneys practicing before the district courts in our circuit all too frequently disregard the plain instructions in Rule 12(M) or its equivalents in other districts. See *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921–22 (7th Cir.1994) (collecting cases where we have "repeatedly upheld the strict enforcement" of local summary judgment rules such as Rule 12); see also *Bradley v. Work*, 154 F.3d 704, 707–08 (7th Cir.1998); *Dade v. Sherwin–Williams Co.*, 128 F.3d 1135,

1139 (7th Cir.1997); *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1316–17 (7th Cir.1995); *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir.1995). We reiterate here that rules structuring the summary judgment process, like Rules 12(M) and (N) in the Northern District of Illinois, serve an important function for the district court and the parties alike. They assist the court by organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side proposed to prove a disputed fact with admissible evidence. They assist the parties by imposing some discipline on the pretrial process and facilitating an early end to cases that do not require a full trial. We realize that the rules also impose a burden on the attorneys for the parties, but the kind of organization the rules require must occur sooner or later, and the system as a whole is better served if it happens sooner.

The district court correctly observed that it is entitled to require strict adherence to Local Rule 12(M). See *Dade*, 128 F.3d at 1139; *Midwest Imports*, 71 F.3d at 1316. This means that it was entitled to disregard references to depositions and other discovery materials that appeared only in the supporting brief, and to decide the motion based on the factual record outlined in the Rule 12(M) and (N) statements. The defendants' statement, as the district court pointed out, was barebones indeed. It identified the named plaintiffs, their employers, the basis of the district court's jurisdiction and venue, and the particular DEA seminar that each named plaintiff attended. It therefore necessarily conceded the full range of obnoxious behavior the plaintiffs alleged, both on their own behalf and on behalf of the class they represented.

Moreover, the district court properly demanded that the defendants' summary judgment motion should be considered with regard to the entire class. If the defendants believed that the absent class members could not state a claim, the de-

fendants should have made a motion to decertify the class. To allow the defendants to separate out the named plaintiffs for the purpose of summary judgment effectively nullifies the class certification. Thus, the defendants' appeal can succeed at this point only if they were entitled to qualified immunity as a matter of law with respect to the class claims they faced.

### B. *Qualified Immunity*

A defendant raising a claim of qualified immunity is not directly attacking the merits of a plaintiff's claim. Instead, she is making the more modest assertion that, in the circumstances presented, the price of public employment should not include liability for civil damages when the law is not clearly established. As the Supreme Court explained in the leading case of *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), if the law was not clear, no liability should result because "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.* at 818, 102 S.Ct. 2727. We must therefore decide whether the law as it existed at the time of the training seminars (1993 and 1994) clearly established the basis for the plaintiffs' claims. See *Nabozny v. Podlesny*, 92 F.3d 446, 455 (7th Cir.1996).

The fact that arbitrary gender-based discrimination, including discrimination in an educational setting, violates the equal protection clause has been plain in this circuit for almost a decade and a half. In 1986, we held that sexual harassment constitutes sex discrimination in violation of the equal protection clause. *Bohen v. City of East Chicago, Indiana*, 799 F.2d 1180, 1185 (7th Cir.1986). Later, in *Nabozny*, we denied a qualified immunity defense in a case claiming that school officials had violated the plaintiff's right to equal protection through gender discrimination. Even though *Nabozny* itself was decided in 1996, and thus the result is not part of

the background against which the present defendants operated, it contains a discussion of equal protection principles relevant to sex discrimination claims that is useful. It traced this component of the equal protection clause back to the Supreme Court's decisions in *Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), W*einberger v. Wiesenfeld*, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975), and *Mississippi University for Women v. Hogan*, 458 U.S. 718, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982). See *Nabozny*, 92 F.3d at 455. As the *Nabozny* court found, those decisions established the principle that schools are required to give male and female students equivalent levels of protection. *Id.* at 456. Furthermore, this principle was sufficiently well established that it required the denial of the defendants' qualified immunity motion in the *Nabozny* case. *Id.*

When a case is brought against federal officials, the equal protection clause of the Fourteenth Amendment does not provide the theoretical basis of the claim. Instead, courts turn to the due process clause of the Fifth Amendment, which has been understood to incorporate equal protection principles from the time of *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954), forward. See *Davis v. Passman*, 442 U.S. 228, 234, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (collecting cases where the Supreme Court "has held that the Due Process Clause of the Fifth Amendment forbids the Federal Government to deny equal protection of the laws"); see also *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 543 n. 21, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987); *Buckley v. Valeo*, 424 U.S. 1, 93, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). Other courts have relied on the Fifth and Fourteenth Amendment due process clauses directly to condemn sex discrimination in the form of harassment, without mentioning equal protection principles. See *Doe v. Taylor Independent School Dist.*, 15 F.3d 443 (5th Cir.1994) (en banc) (denying qualified immunity with re-

spect to one defendant and granting it to another); *Lipsett v. University of Puerto Rico*, 864 F.2d 881 (1st Cir.1988) (holding that a federal official who was the director of a training program could be sued in his individual capacity under the due process clause of the Fifth Amendment). In our view, however, the pertinent question for purposes of qualified immunity is not whether the defendants could have cited the exact article, section, and clause of the Constitution that they were offending. It is instead the more practical question whether they would have understood that what they were doing violated the plaintiffs' rights.

█ Taking the facts as the defendants have conceded them to be, given their failure to file a more detailed 12(M) statement, we agree with the district court that they were not entitled to qualified immunity. First, as discussed above, it was well established by 1993 that the U.S. Constitution does not tolerate sex discrimination in an educational setting. Contrary to the defendants' argument, the fact that neither this court nor any other has ever dealt with a situation involving a short training seminar conducted for narcotics officers is of no moment. Under the doctrine of qualified immunity, "liability is not predicated upon the existence of a prior case that is directly on point." *Nabozny*, 92 F.3d at 456; see also *McDonald v. Haskins*, 966 F.2d 292, 293 (7th Cir.1992). In light of the law at the time, a reasonable government official in the defendants' shoes would have understood that the prohibition against sexual harassment extended to their training seminars.

Second, the conduct alleged by the plaintiffs constituted sexual harassment under the law as it was established in 1993. The defendants appear to believe that after the Supreme Court's later decision in *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998), sexual harassment is not possible unless there was either an explicit or implicit proposal of sexual activity. They are mistaken. Indeed, the Court said just the opposite in *Oncale*, when it commented that sexual harassment "typically involves explicit or implicit proposals of sexual activity," but that such proposals were *not* required to render conduct actionable. *Id.* at 1002. Instead, the Court said, "harassing conduct need not be motivated by sexual desire"; it may be "motivated by general hostility to the presence of women in the workplace." *Id.* A finder of fact could easily conclude that the comments here, which belittled women and suggested that they were solely of sexual interest, were motivated by just that kind of hostility to women in the training course.

Again relying on *Oncale*, as well as several decisions from this court, the defendants also argue that the language and conduct here were not sufficiently severe or pervasive to amount to sexual harassment. See also *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 431 (7th Cir.1995); *Weiss v. Coca–Cola Bottling Co. of Chicago*, 990 F.2d 333, 337 (7th Cir.1993); *Saxton v. American Tel. & Tel. Co.*, 10 F.3d 526, 534–35 (7th Cir.1993). Crotch-grabbing, they suggest, is so prevalent in today's society that it cannot be actionable, and vulgar language is omnipresent. We do not disagree that sexually explicit language and conduct is common, but the defendants' argument proves too much. Just because a television show may depict a sexual assault does not mean that instructors in a DEA program would henceforth be free to commit sexual assault on a trainee. The plaintiff in the Supreme Court's decision in *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), may well have heard the language and been exposed before to the kinds of images her harassers had used. But the Court's opinion makes it clear that it is one thing to know about these things in the abstract, and it is quite another to be the target on a more personal level. *Id.* at 21–23, 114 S.Ct. 367.

█ In addition, we must recall that we are simply addressing qualified immu-

nity at this stage. A trier of fact may not believe that the defendants made some or all of the remarks in question. The defendants may at a proper time be able to supply enough context for certain remarks that, under *Oncale's* standards, it becomes clear that they were not the kind of harassment the law addresses. But a qualified immunity appeal is not the time to dispose of disputed issues of fact. Indeed, if an immunity determination depends on factual determinations, we do not even have jurisdiction to entertain it. See *Johnson v. Jones*, 515 U.S. 304, 307, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995); *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996). The reason that we have jurisdiction in this case is because the defendants were willing to stand on the record and argue that the harassment claims failed as a matter of law. We have concluded that they do not, and thus that immunity was properly denied at this stage.

We have considered the remaining arguments the defendants have offered, including their assertion that the plaintiffs never indicated that the actions were unwelcome and their suggestion that the remarks were offensive to everyone, not just women. The former claim is simply not true, on the record as it now exists: the named plaintiffs complained about the defendants' behavior in their course evaluations, and at least some absent class members complained in person to one of the defendants. The latter argument utterly ignores the misogynist or sexist nature of the alleged remarks. Only someone with no sense of the real world could think that male and female participants in the training session would perceive these comments in the same way.

At this point, therefore, we conclude that the district court correctly denied the defendants' motion for summary judgment based on qualified immunity, and we AFFIRM the judgment of that court.