[PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 99-12782
_____

D.C. Docket No. 95-02766-CV-RWS-1

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 09, 2001
THOMAS K. KAHN
CLERK

REBECCA LEWIS, BRENDA HEATH, et al.,

Plaintiffs-Appellees,

versus


DAVID McDADE, individually and in his official
capacity as District Attorney,

Defendant-Appellant.



_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

**(May 9, 2001)**

ON PETITION FOR REHEARING EN BANC

(Opinion August 14, 2000)

Before ANDERSON, Chief Judge, TJOFLAT, EDMONDSON, BIRCH, DUBINA, BLACK, CARNES, BARKETT, HULL, MARCUS, and WILSON, Circuit Judges.

O R D E R:

The Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it (Rule 35, Federal Rules of Appellate Procedure; Eleventh Circuit Rule 35-5), the Suggestion of Rehearing En Banc is DENIED.

/s/ R. LANIER ANDERSON
CHIEF JUDGE

EDMONDSON and DUBINA, Circuit Judges, concurring:

The chief reason for not taking this case en banc is that we have only recently heard another qualified immunity case en banc: <u>Marsh v. Butler County</u>, 225 F.3d 1243 (11th Cir. 2000) (reheard en banc 6 Feb. 2001). The <u>Marsh</u> case -- upon which we are still working -- will allow all of the court's judges ample opportunity to engage in the interplay of opinions and ideas on the subject of qualified immunity. En banc rehearings are costly to an appellate court in terms of consumption of its always limited resources of judicial time and energy. Relatively few cases can be heard en banc each year. It seems best to us not to go en banc on another qualified immunity case so soon, but to invest our en banc efforts in tackling other issues that the court's judges have not yet had the occasion to consider en banc and to give the new issues the extra attention that en banc rehearings entail.

In addition, our estimate of the case at hand is that it was decided accurately. Material facts exist in this case that are undisputed and that are not present in the cases relied on by the dissent: Plaintiffs actively participated in sexual games and conduct in the office.[1]

---

[1]      As in every qualified immunity case, the complete set of facts facing the defendant is of critical importance. In this case, female employees dressed as prostitutes, gave Defendant a photo album with sexually charged comments and photographs, gave Defendant an

Only unwanted sexual conduct can be harassing conduct.  See Meritor Sav.

Bank v. Vinson, 106 S. Ct. 2399, 2406 (1986).  The Constitution does not prohibit

all boorish or rude behavior.  See Faragher v. City of Boca Raton, 118 S. Ct. 2275,

2283-84 (1998) (explaining that federal employment law creates no "general

civility code."); Oncale v. Sundowner Offshores Servs. Inc., 118 S. Ct. 998, 1003

(1998) (noting that "simple teasing" in the workplace insufficient to support

sexual harassment claim).  Given these facts and the case law available at the time

of the alleged incidents of sexual harassment,[2] we cannot say that every reasonable

district attorney would have known that Defendant's behavior, in this context,

violated the Constitution: that is, would have known that this conduct was truly

unwanted and, thus, unlawful.  No party or judge has presented us with a

materially similar case that would have put Defendant on clear notice that his

behavior -- in the light of the fact that the female employees (now Plaintiffs)

willingly participated in the mutual teasing and joking that constituted the sexual

conduct in the office -- violated the Constitution.  When, as here, the legal

---

ice sculpture of breasts, and prepared a tape recording of sexual comments and innuendos for Defendant.  At the same time, Plaintiffs praised Defendant as a wonderful employer.

[2]      Plaintiffs and the dissent rely on Cross v. Alabama, 49 F.3d 1490 (11th Cir. 1995).  Of course, Cross was decided after the alleged acts of sexual harassment occurred.  So Cross could not have put Defendant on notice in 1994 that his acts might violate the Constitution.

consequences of a set of facts is unclear under the preexisting law at the time of the event, qualified immunity applies.

BARKETT, Circuit Judge, dissenting:

I respectfully dissent from the court's denial of rehearing en banc. In this case, the panel held that although District Attorney McDade "ran a DA's office rife with gender-discrimination," qualified immunity protects him from civil liability because there is no pre-existing case which would have put him on notice that: (1) berating his female employees with pejorative terms such as "hysterical female," "bitch," "blonde bombshell," "smurfette," and "bimbette," (2) photographing his female employees' buttocks, (3) throwing coins and other objects down his female employees' blouses, (4) telling a female employee to uncross and cross her legs again while he watched, (5) stating that the only thing women are good for is "making babies," (6) saying "women don't have the balls to be prosecutors," and (7) embarrassing his female employees with statements such as "you can't come in, Rita doesn't have her clothes on," constituted sexual harassment. I believe that this case should be heard en banc not only because in 1994 a reasonable district attorney, or any other reasonable person, would have known that such outrageous conduct constituted sexual harassment, but also because, in finding to the contrary, the court ignores Supreme Court and Eleventh Circuit precedent, as well as the overwhelming precedent of the other Courts of Appeal.

6

Although the court's opinion recognizes that plaintiffs have a right to be free from unlawful sexual harassment and that McDade's conduct was similar to that found to violate clearly established law in Cross v. Alabama, 49 F.3d 1490 (11th Cir. 1995),[1] the court nonetheless concludes that "it would not be clear to a reasonable person acting in McDade's position that his behavior violated plaintiffs' constitutional rights" because the facts of this case are not sufficiently similar to any pre-existing case.[2] In finding that no pre-existing case was sufficiently similar, the court takes the clearly established inquiry to a level of

---

[1]    In Cross, the harassing conduct included communicating with female employees in an "extremely hostile" and "very angry, very aggressive" manner, "say[ing] derogatory remarks to them in front of others," and throwing objects at female employees. 49 F.3d at 1494. The Cross Court found this conduct to be in violation of clearly established. The clearly established law upon which it relied was the 1979 Supreme Court case of Davis v. Passman, 442 U.S. 228, 235 (1979), holding that sexual discrimination against a public employee is unconstitutional.

[2]    The court's opinion distinguishes this case from that of any other pre-existing case based upon three facts: (1) only one of the plaintiffs ever complained to McDade about his sexually harassing behavior; (2) some of the plaintiffs participated in some of the behavior; and (3) each of the plaintiffs praised McDade as a friend and an employer. These three facts, however, have nothing to do with whether or not the right to be free from sexual harassment in the workplace was clearly established in 1994. As to the first reason, neither the law of this Circuit, nor any other that I am aware of, requires the victim of sexual harassment to notify the perpetrator of the harassment that he is violating her rights in order to establish liability. Likewise, the second reason, that some of the plaintiffs allegedly participated in some of the behavior, goes to McDade's subjective intent -- not to the analysis of whether the violation had been clearly established. Finally, the fact that the plaintiffs praised McDade as both a friend and an employer again has nothing to do with whether McDade's conduct violated clearly established law. Indeed, a plaintiff need not prove that a sexually harassing employer is a bad person or a bad employer in ways wholly unrelated to the harassing conduct in order to prevail on her claim.

specificity that runs afoul of the Supreme Court's holdings in <u>Anderson v.</u>

<u>Creighton</u>, 483 U.S. 635, 640 (1987), and <u>United States v. Lanier</u>, 520 U.S. 267,

269 (1997).

In <u>Anderson</u>, the Supreme Court held that for a right to be clearly

established such that a defendant is not entitled to qualified immunity, "[t]he

contours of the right must be sufficiently clear that a reasonable official would

understand that what he is doing violates that right.  <u>That is not to say that an</u>

<u>official action is protected by qualified immunity unless the very action in</u>

<u>question has previously been held unlawful</u> . . ., but it is to say that in light of pre-

existing law the unlawfulness must be apparent."  483 U.S. at 640 (internal

citations omitted) (emphasis added).  In <u>Lanier</u>, the Supreme Court held that even

under the standards necessary to support a criminal conviction of a government

official, precedents involving "fundamentally similar" facts are not necessary to

give state officials fair warning that their conduct contravenes constitutional

rights:

> Nor have our decisions demanded precedents that
> applied the right at issue to a factual situation that is
> "fundamentally similar" . . . .  To the contrary, we have
> upheld convictions under § 241 or § 242 despite notable
> factual distinctions between the precedents relied on and
> the cases then before the Court, so long as the prior
> decisions gave reasonable warning that the conduct then

8

at issue violated constitutional rights.

Id. at 269.

Although manifestations of sexual harassment may differ, its purpose and intent is readily discernible from a range of acts that need not be explicitly catalogued or itemized in order to put any reasonable person on notice that the conduct constitutes sexual harassment. For example, in Braddy v. Florida Department of Labor and Employment Security, 133 F.3d 797 (11th Cir. 1998), we held that a defendant was not entitled to qualified immunity on the plaintiff's sexual harassment claim because "if the jury believes Braddy's allegations including the allegation that [the defendant] followed Braddy down an office hall, bull whip in hand, and said 'this is my sexual fantasy for you,' then a jury could very reasonably find that [the defendant's] behavior was clearly and obviously in violation of existing federal law." Id. at 802. It is ludicrous to suggest that the Braddy court should not have found such conduct actionable because a bull whip scenario had not presented itself in a prior case. It is equally ludicrous to hold that a reasonable district attorney would not know that, inter alia, throwing coins down his female employees blouses and photographing their buttocks constitutes sexual harassment unless a pre-existing case had found identical conduct unconstitutional.

9

The court's holding in this case not only conflicts with Supreme Court and

Eleventh Circuit precedent, it conflicts with the decisions of the other Courts of

Appeal as well. For example, the Fourth Circuit in Beardsley v. Webb held that a

defendant was not entitled to qualified immunity on a sexual harassment claim

and, in so holding, applied the following analysis:

> Webb's conduct occurred during the period from March
> to August 1992. We have already noted that in 1978
> the Supreme Court wrote that the equal protection
> clause confers on a public employee a federal right to
> be free from gender discrimination, Davis v. Passman,
> 422 U.S. at 234-35, and that sexual harassment has long
> been recognized to be a type of gender discrimination.
> See Bohen v. City of East Chicago, 799 F.2d at 1185
> [(7th Cir. 1986)]. No male officer could reasonably
> have thought that it was not sexual harassment to
> announce that it was his turn to make out with a woman
> who was subject to his command, especially when the
> woman had previously protested his gender oriented
> behavior.

30 F.3d 524, 530-31 (4th Cir. 1994). Therefore, like this court in Cross and

Braddy, other circuits have suggested that the presentation of fundamentally

similar facts in prior caselaw is not necessary to put a reasonable person on notice

regarding what conduct constitutes harassment. See, e.g., Markham v. White, 172

F.3d 486, 491-92 (7th Cir. 1999);[3] Johnson v. Martin, 195 F.3d 1208, 1216 (10th

---

[3]     The Seventh Circuit held that by 1993 it was clearly established that an instructor
employed by the DEA violated a female police officer's equal protection rights by sexually

10

Cir. 1999);[4] <u>Bator v. Hawaii</u>, 39 F.3d 1021, 1027-28 (9th Cir. 1994);[5] <u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1479 (3d Cir. 1990).[6]

Government officials should, of course, be protected when they attempt to constitutionally perform their duties and fail despite their good faith.  The court's holding in this case, however, extends this protection beyond those government officials who make an erroneous judgement call because of unclear legal precedent, to include knowing and deliberate lawbreakers as well.  At the same

harassing her and rejected the defendant's argument that he was entitled to qualified immunity because "neither this court nor any other has ever dealt with the situation involving a short training seminar conducted for narcotics officers."  <u>Markham</u>, 172 F.3d at 492.  The Seventh Circuit characterized that argument as "of no moment," and noted that "[u]nder the doctrine of qualified immunity, liability is not predicated upon the existence of a prior case that is directly on point."  <u>Id.</u> (internal citations omitted).

[4]     The Tenth Circuit held that despite the lack of caselaw directly addressing the issue, it was clearly established by 1994 that a public official who used his position to sexually harass a non-employee violated the Constitution.  In reaching this conclusion, the Tenth Circuit cautioned that "the concept of clearly established law should not be applied too literally," <u>Johnson</u>, 195 F.3d at 1216, and noted that "[w]e have never said that there must be a case presenting the exact fact situation at hand in order to give parties notice of what constitutes actionable conduct. . . .  Instead, we merely require the parties to make a reasonable application of existing law to their own circumstances."  <u>Id.</u>

[5]     The Ninth Circuit considered and rejected an approach similar to that used by the court here, and held that the right of public employee to be free from sexual harassment was clearly established by 1982 based upon the Supreme Court's decision in <u>Davis v. Passman</u>.

[6]     The Third Circuit held that the right of a public employee to be free from sexual harassment "was well grounded in the law and widely known to the public by 1986."  In reaching this conclusion, the Third Circuit held "[a]lthough there may not have been any precedents with precisely analogous facts it is sufficiently clear that by allowing the harassment of [the plaintiffs] to continue, and possibly even participating directly in that harassment, a reasonable official would understand that what he is doing violates their rights."  <u>Andrews</u>, 895 F.2d at 1479-80 (internal citations omitted).

11

time, the court eviscerates the remedies intended by Congress in enacting Title VII

and Section 1983.  For the foregoing reasons, this court, <u>en banc</u>, should

reconsider, and publish, an opinion in this case.[7]

---

[7]     Contrary to Judges Edmondson and Dubina's view, I do not believe that <u>Marsh v. Bulter County</u> has any applicability to this case.  Moreover, regarding the Plaintiffs participation in some of the alleged behavior, as the district court found, viewing the evidence in the light most favorable to the non-moving party, there is a clear delineation between the behavior in which the Plaintiffs participated and McDade's behavior "that could in no way be described as sexual but rather as abusive and derogatory and directed only at females in the office.  There is no evidence that the Plaintiffs welcomed the latter conduct."