**Kelly Jo WYATT and Candace Garnett, Plaintiffs,**

v.

**Galen SLAGLE, the City of Jefferson and Dan Taylor, Defendants.**

**No. CIV.4:01–CV–30020.**

United States District Court, S.D. Iowa, Central Division.

Oct. 17, 2002.

---

Michael J. Burdette, McEnroe McCarthy & Gotsdiner PC, Donna M.Schauer, Schauer Law Firm, West Des Moines, IA, for Plaintiffs.

Larry D. Spaulding, Bradshaw Fowler Proctor & Fairgrave, Mark J. Wiedenfeld, Joseph P. McLaughlin, Wiedenfeld & McLauglhin LLP, Des Moines, IA, for Defendants.

### RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

WALTERS, Chief United States Magistrate Judge.

This matter is before the Court following hearing on separate motions for summary judgment (# s 17 and 21) by defendants City of Jefferson/Taylor and defendant Slagle. The action is brought under 42 U.S.C. § 1983. Jurisdiction is based on 28 U.S.C. §§ 1331, 1343(a)(3).

Plaintiffs claim violation of their Fourth and Fourteenth Amendment rights under the U.S. Constitution. The case results from the January 22, 1999 detention, arrest and subsequent search of plaintiffs by defendant Galen Slagle, a Jefferson, Iowa police officer. Though plaintiffs make many complaints about Slagle's demeanor and conduct, the focus in their motion papers is on the circumstances of Slagle's post-arrest search of their persons.[1] They

---

1. The Court has relied on plaintiffs' briefs in resistance to the motions to define their theo-

contend the search violated their Fourth Amendment right not to be subjected to unreasonable searches, and that the search also violated their substantive due process rights protected by the Fourteenth Amendment. Plaintiffs sue the City and Dan Taylor, the police chief, for, respectively, municipal and supervisory responsibility for Slagle's conduct. The motions attack the factual basis and constitutional grounds for plaintiffs' claims, and defendant Slagle asserts the defense of qualified immunity. The case is assigned to the undersigned pursuant to 28 U.S.C. § 636(c).

At the outset, the Court expresses its appreciation to counsel for their careful attention to Local Rule 56.1, particularly with respect to their factual statements and the preparation and citation (for the most part) to the required summary judgment appendices, which has greatly facilitated the consideration of the motions.

## I.

Defendants are entitled to summary judgment if the affidavits, pleadings, and discovery materials "show that there is no genuine issue as to any material fact and that [movant] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

> Although we view the facts in a light most favorable to the non-moving party, in order to defeat a motion for summary judgment, the non-moving party cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit.

*Carter v. St. Louis University,* 167 F.3d 398, 400 (8th Cir.1999). "[M]ere allegations which are not supported with specific facts are not enough to withstand [a motion for summary judgment]." *Klein v.*

*McGowan,* 198 F.3d 705, 709 (8th Cir. 1999).

Slagle contends he is entitled to qualified immunity from plaintiffs' claims.

> [T]o withstand a motion for summary judgment on qualified immunity grounds, a civil rights plaintiff must (1) assert a violation of a constitutional right; (2) demonstrate that the alleged right is clearly established; and (3) raise a genuine issue of fact as to whether the official would have known that his alleged conduct would have violated plaintiff's clearly established right.

*Young v. Harrison,* 284 F.3d 863, 866–67 (8th Cir.2002). In cases raising qualified immunity as a defense, the Supreme Court and the Eighth Circuit have held that the issue " 'should be decided by the court long before trial,' . . . or else much of the benefit of the [qualified immunity] rule will be lost." *Greiner v. City of Champlin,* 27 F.3d 1346, 1351–52 (8th Cir.1994) (quoting *Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam)). "Whether a given set of facts entitles the official to summary judgment on qualified immunity grounds is a question of law." *Greiner,* 27 F.3d at 1352 (citing *Creighton v. Anderson,* 922 F.2d 443, 447 (8th Cir.1990)). Summary judgment cannot be granted, however, "if there is a genuine dispute concerning predicate facts material to the qualified immunity issue." *Greiner,* 27 F.3d at 1352 (citing *Creighton,* 922 F.2d at 447 and *Gainor v. Rogers,* 973 F.2d 1379, 1384–85 (8th Cir. 1992)).

If defendant Slagle is found to have qualified immunity or the claims against him fail on the merits, the claims against defendants City of Jefferson/Dan Taylor based on municipal/supervisory liability

ry of the case and the constitutional issues presented. Accordingly, the Court has not

addressed arguments made by defendants which plaintiffs have not contested.

will likewise fail. *Turpin v. County of Rock,* 262 F.3d 779, 783 (8th Cir.2001) (citing *Abbott v. City of Crocker,* 30 F.3d 994, 998 (8th Cir.1994)) (unless officer is liable on substantive claim underlying municipality liability claim, municipal will not be liable).

## II.

There is very little dispute about what occurred between plaintiffs and Officer Slagle on the night in question. At the time of the incident, plaintiffs Kelly Jo Wyatt and Candace Garnett were residents of the City of Jefferson, Iowa. Ms. Wyatt was a junior in high school and 16 years old; Ms. Garnett was a senior in high school and 17 years old. Both girls were under the legal age to be drinking alcohol. Defendant Galen Slagle was hired as a police officer for the Jefferson Police Department in December 1996. Defendant Dan Taylor is the Chief of Police for the City of Jefferson.

On January 22, 1999 Ms. Wyatt and Ms. Garnett were drinking in Wyatt's car[2] while a friend, Marissa F., was driving the car out in the country. The girls had an eighteen-pack of beer from which six or seven cans were missing when they started. Marissa was not drinking. After driving around for several hours, Wyatt and Garnett drinking beer, the three decided to go to a house in Jefferson where a friend, Elisha K., was staying. They picked up Elisha, but returned right away so Elisha could get something in the house. The car was parked on the wrong side of the road at this time. There were full cans of beer in the car and both Wyatt and Garnett had open containers.

Officer Slagle was on duty in a patrol car when, at about 10:48 p.m., he observed Wyatt's car parked facing the wrong direction in violation of a municipal ordinance. He observed another car have to maneuver around the Wyatt car.

Slagle stopped, got out of his patrol car and approached the driver's window of the Wyatt vehicle. He talked to Marissa and as he did so smelled the odor of alcohol coming from the car. Slagle believed the occupants of the car were all under 21. He asked them what was under a coat he observed. In response Garnett, who was in the backseat, revealed a bag containing the beer. According to plaintiffs Slagle's tone of voice at this time was "very intimidating." (Pl.App. at 31). Slagle asked the girls if they had been drinking and no one admitted to doing so. He obtained identification and confirmed all of the occupants were under 21.[3] He administered preliminary breath tests to the occupants. Wyatt and Garnett tested positive for alcohol consumption and the other two tested negative.

At some point Slagle asked the occupants to get out of the car. He placed Wyatt and Garnett under arrest for possession of alcohol under the legal age, a misdemeanor. Iowa Code § 123.47. He asked them to get into the backseat of his patrol car. They were not handcuffed and were read their *Miranda* rights. Wyatt has testified Slagle continued to ask her questions after administering the *Miranda* warning. Slagle had found a marijuana pipe in the car. When Wyatt refused to tell him whose it was Slagle slammed the door of the patrol car and went to Wyatt's car. He then returned and told her if she did not answer his questions, "things were going to get a lot worse than they could be," slamming the car door again when Wyatt made a statement to him "you're threatening me." (Pl.App. at 33, 34).

---

**2.** The vehicle was registered in the name of Wyatt's father.

**3.** The legal age for drinking in Iowa is and was at that time 21 years. Iowa Code § 123.3(19).

Slagle searched Wyatt's car. He found two "caps" on the center console which smelled of marijuana and which, by his experience and training, he associated with the use of marijuana pipes. In the driver's door pocket he found the marijuana pipe with marijuana residue referred to previously. He also found two open, partial cans of beer, one in the front passenger area where Wyatt had been sitting and one in the back rear where Garnett had been sitting.

Slagle released Marissa and Elisha and took Wyatt and Garnett to the Greene County Law Enforcement Center ("LEC") to complete paper work and processing, and to call their parents. See Iowa Code § 232.19(2). The drive to LEC took two to three minutes. Jail records indicate Slagle showed up at the LEC with plaintiffs at 11:27 p.m.

The LEC is operated by the Greene County Sheriff's Department. Its jailer and dispatcher are under the supervision of the Greene County Sheriff. A male jailer and male dispatcher were on duty that night. No female employees were on duty until midnight when a female jailer was scheduled to begin her shift.

After arriving at the LEC, Slagle placed Wyatt and Garnett in adjoining interview rooms. They were not placed in jail cells. Slagle does not recall when he called the girls' parents and there is some question whether he did call them. However, it is apparent plaintiffs' family members were summoned to the LEC as Wyatt's parents arrived at 12:05 a.m. and Garnett's grandparents at 12:08 a.m.

Slagle had not conducted a pat-down search of the plaintiffs at the scene and proceeded to do so at the LEC. His normal practice was to do a pat-down search for weapons and contraband at the scene of an arrest or later at the LEC. He searched plaintiffs separately in each interview room with no one else present.

He did not specifically recall actually conducting the pat-downs. His usual procedure in conducting a pat-down search was to inform the subject that he intended to do a pat-down and that he would use the back of his hands to search areas where there might be things concealed, usually in the pocket areas, leg and ankle areas, and tops of socks.

Slagle asked Wyatt to remove her coat and empty her pockets on the desk in the interview room, then searched her coat. Wyatt testified that Slagle "basically" backed her against the wall, told her he was going to use the backs of his hands to check her front pockets and proceeded to pat her front side. (Pl.App. at 40–41). He then went behind her and patted down her back side. (Id. at 40). There is an issue about whether Slagle used the back or the front of his hands when he patted Wyatt's rear pocket areas, but for purposes of the summary judgment motion the Court will assume he used the front of his hands. Wyatt did not have front pockets and was wearing fitted pants. Slagle did not touch Wyatt's breasts or groin area and did not squeeze her buttocks or back or any other parts of her body. He found a partial pack of cigarettes in Wyatt's coat. After the search Slagle asked Wyatt more questions in what Wyatt described as a "very rude, angry, ... very intimidating" way. (Id. at 41).

In the next room, Slagle asked Garnett to remove her coat and empty her pockets on the desk in that room. He searched her coat. Garnett had not emptied everything out of her coat as she did not want to get in trouble for the cigarettes she had in her pocket. Slagle found the cigarettes in her coat pocket. Garnett testified Slagle told her he was going to use the backs of his hands to check her pockets. He then patted her pockets and down the front of her legs to her knees with the backs of his

hands. Slagle then went behind Garnett and patted down her backside. Garnett did not know whether Slagle used the front or back of his hands on the back of her body as she could not see. (Jefferson App. at 38). Garnett testified Slagle did not touch her breasts or her groin or crotch area and did not squeeze her buttocks or back or any other parts of her body. (*Id.*) While she was in the interview room, Garnett reports she told Slagle several times she needed to use the restroom and that he would not allow her to use one.

At the time the Jefferson Police Department did not have any female officers. A female jailer, Jean Tuhn, arrived at the LEC at 11:53 p.m. Upon her arrival, Tuhn took Garnett to the restroom where she was allowed to use a stall in privacy. It was not the restroom used for prisoners and Garnett did not have to go by the jail prisoners.

The night of their arrest was the first contact either Wyatt or Garnett had with Slagle. Both plaintiffs admit they should have been arrested and taken into custody that night.

The Jefferson Police Department Policy and Procedure Manual stated in relevant part:

22.62 **Transportation of Prisoners**

When transporting prisoners they shall be handcuffed, male or female, and juveniles as according to the Juvenile Code. They shall always be patted down for weapons before placed in a patrol vehicle. The only exception to this rule being when health or other physical condition of the inmate

does not permit it. All prisoners should be placed in the back seat of the vehicle.

22.63 **Opposite Sex Prisoners**

Opposite sex prisoners shall be touched only as necessary in taking them into custody and determining that weapons are not being concealed....

(Pl.App. at 4). There was also a verbal policy that minors in possession of alcohol would be arrested and brought to the LEC for booking. (Jefferson App. at 6).

### III.

*Slagle*

Plaintiffs do not question the legality of the vehicle stop made by Slagle or their subsequent arrest.[4] Nor do they contend that they could not lawfully be subjected to a pat-down search incident to arrest. Plaintiffs object to the manner in which the pat-down search was conducted by Slagle, and that it was conducted by Slagle, a male. They base their claim on the Fourth Amendment prohibition against "unreasonable searches and seizures" and have also pleaded the Due Process Clause of the Fourteenth Amendment, which involves the right to substantive due process which resides therein.[5] One, but not both, of these constitutional provisions is applicable. It is not always easy to tell which should apply, but here there is not much doubt that the Fourth Amendment provides the basis for decision in this case.

Our court of appeals has, in general, applied Fourth Amendment standards to

---

**4.** Iowa Code section 232.19(1)(b) states that a child may be taken into custody "[f]or a delinquent act pursuant to the laws relating to arrest." *See* Iowa Code ch. 804 (concerning arrests).

**5.** The Complaint also refers to the Sixth Amendment and the Equal Protection Clause

of the Fourteenth Amendment. (Complaint ¶ ¶ 6, 41(b)). Plaintiffs concede there is no evidence of a Sixth Amendment violation (Pl. Brief at 1) and have also produced no evidence of and do not argue an equal protection violation.

claims of excessive force against arrestees. *See Wilson v. Spain,* 209 F.3d 713, 715–16 (8th Cir.2000); *Moore v. Novak,* 146 F.3d 531, 535 (8th Cir.1998); *Mayard v. Hopwood,* 105 F.3d 1226, 1228 (8th Cir.1997); *see also Fontana v. Haskin,* 262 F.3d 871, 879 (9th Cir.2001) (Fourth Amendment continues to apply after arrestee is in the custody of arresting officers). This case does not involve excessive force, but it is about the manner in which an arresting officer conducted a search incident to arrest, a subject which has long been viewed as appropriately addressed under the Fourth Amendment. *See United States v. Edwards,* 415 U.S. 800, 802–03, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974); *United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Where a specific constitutional provision such as the Fourth Amendment is implicated, that provision, not substantive due process, sets the standard. *County of Sacramento v. Lewis,* 523 U.S. 833, 842–43, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (citing *United States v. Lanier,* 520 U.S. 259, 272 n. 7, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997)). The Supreme Court has been cautious about overextending the reach of substantive due process principles to avoid converting the Due Process Clause into a body of tort law. *Id.* at 848, 118 S.Ct. 1708.

■ "Reasonableness" is the touchstone of the Fourth Amendment. It is judged by an objective standard. *Graham v. Connor,* 490 U.S. 386, 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397, 109 S.Ct. 1865. The reasonableness inquiry concerns both the fact of a search and the manner in which it is conducted. *See Tennessee v. Garner,* 471 U.S. 1, 7–8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); *Hummel–Jones v.*

*Strope,* 25 F.3d 647, 650 (8th Cir.1994). Here plaintiffs, female juveniles, complain about being patted or touched by Slagle, a male officer, on their legs and buttocks in the course of his search of their person, characterizing the search as a "sexual assault"; in substance, a complaint of unwarranted intrusion on their personal privacy rights. This type of claim implicates "a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

■ As evidence of unreasonableness, plaintiffs point first to Slagle's alleged departure from department policies pertaining to the transportation of prisoners and the treatment of "opposite sex prisoners." *See supra* at 937. They note the written policy required a pat-down of prisoners occur before placement in a patrol car and they argue Slagle touched them more than "as necessary" to take them into custody and ascertain the presence of weapons, also as provided in department policy. While relevant, police department procedures do not set the standard by which Fourth Amendment reasonableness is judged. *See Whren v. United States,* 517 U.S. 806, 813–15, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). One reason for this is that practices and procedures vary from one locality to the next. *Id.* at 815, 116 S.Ct. 1769.

■ Neither of the procedures plaintiffs point to are constitutionally required. A search incident to arrest must be contemporaneous with the arrest, but this requirement is met if the arrestee is searched upon arrival at the police station. *See Edwards,* 415 U.S. at 803, 94 S.Ct. 1234; *Curd v. City Court of Judsonia, Ark.,* 141 F.3d 839, 843 (8th Cir.), *cert. denied,* 525 U.S. 888, 119 S.Ct. 204, 142 L.Ed.2d 167 (1998). The search here oc-

curred shortly after Slagle's arrival at the LEC, well within the limits set by the "flexible constitutional time clock." *Curd,* 141 F.3d at 843. As to the opposite sex prisoner policy, it is not clear that Slagle's pat-downs were inconsistent with the policy, but if so, that fact also would not render his searches constitutionally unreasonable. Opposite sex pat-down searches have generally been upheld in the prison context. *See Timm v. Gunter,* 917 F.2d 1093, 1100–01 & n. 12 (8th Cir.1990), *cert. denied,* 501 U.S. 1209, 111 S.Ct. 2807, 115 L.Ed.2d 979 (1991); *Madyun v. Franzen,* 704 F.2d 954, 956–57 (7th Cir.), *cert. denied,* 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983). Although penological interests are not involved in the case of an arrestee as they are with prison inmates, this Court believes the same result obtains with respect to opposite sex arrestees subjected to a minimally intrusive pat-down outside their clothing. *See Martin v. Swift,* 781 F.Supp. 1250, 1253–54 (E.D.Mich.1992) ("there is no question [practice of allowing male officers to conduct pat-down searches of females] *would* pass constitutional muster" (emphasis original)). The circumstances in which searches incident to an arrest occur are as varied as the arrests themselves. Often there is a sense of immediacy. The Supreme Court recognized this when it observed that "[a] police officer's determination as to how and when to search the person of a suspect whom he has arrested is necessarily a quick *ad hoc* judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search." *Robinson,* 414 U.S. at 235, 94 S.Ct. 467. A mandate that an officer touch opposite sex prisoners only "as necessary" to accomplish an arrest or disarm the arrestee would impermissibly add just such another step in the analysis.

Generally, the balance between the need for a search and the invasion of personal rights which accompanies it weighs against the constitutionality of the search only if the search is conducted "in an extraordinary manner, unusually harmful to an individual's privacy or even physical interests ...." *Whren,* 517 U.S. at 818, 116 S.Ct. 1769. Here there was nothing extraordinary or unusually harmful about the pat-down searches of plaintiffs. The invasion of their privacy was objectively minimal and the manner in which the searches were conducted was routine as far as the record reflects. The searches were justified as incident to an arrest. A lawful arrest "establishes the authority to search" and such a search is "reasonable" under the Fourth Amendment. *Robinson,* 414 U.S. at 235, 94 S.Ct. 467. Slagle was not required to have probable cause to believe plaintiffs in fact had weapons, contraband or evidence on their persons. *United States v. Chadwick,* 433 U.S. 1, 14, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), *overruled on other grounds by California v. Acevedo,* 500 U.S. 565, 575–79, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). Thus, it is not significant that one of the plaintiffs had tight-fitting pants and no pockets in front indicating the unlikelihood that a pat-down would discover anything. The search was conducted at an appropriate place, the LEC. Altogether, the factors which guide the Fourth Amendment analysis on the undisputed facts in the summary judgment record lead to the conclusion that Slagle's pat-down searches incident to the arrests of plaintiffs were reasonable as a matter of law. *See Winston v. Lee,* 470 U.S. 753, 758–63, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985); *Bell,* 441 U.S. at 559–60, 99 S.Ct. 1861.

As noted, plaintiffs characterize Slagle's touching of them as a sexual assault. In this regard they rely on *Rogers v. City of Little Rock, Ark.,* 152 F.3d 790 (8th Cir. 1998), a substantive due process case, in which the Eighth Circuit stated "[n]o de-

gree of sexual assault by a police officer acting under color of law could ever be proper." *Id.* at 796. *See Haberthur v. City of Raymore, Mo.,* 119 F.3d 720, 723–24 (8th Cir.1997) (also a substantive due process case in which plaintiff alleged an on-duty police officer had fondled a private erogenous area and caressed her body while making sexually suggestive remarks). *Rogers* involved the rape of a woman by a police officer while on duty, an obvious violation of the "right to intimate bodily integrity." 152 F.3d at 797. Such conduct could never be viewed as reasonable under the Fourth Amendment. *Id.* at 801 (Loken, J., concurring in part and dissenting in part). It also, as the *Rogers* court found, was sufficiently egregious to meet the "shocks the conscience" standard of substantive due process. *Id.* at 797. Slagle's touching of plaintiffs' buttocks and legs during the course of his pat-down is not the type of conscience shocking "sexual assault" the *Rogers* court had in mind.

 Slagle's pat-downs were not sexual abuse under any of the provisions of Iowa Code ch. 709 which governs that subject. *See* Iowa Code §§ 702.5 (defining "child" as a person under the age of fourteen years), 702.17 (defining "sex act" or "sexual activity"). At argument plaintiffs stated they were referring to Slagle's conduct as a sexual assault in the vernacular, not the legal sense. This raises the question of Slagle's motivation as one of sexual gratification. As evidence, plaintiffs point to Slagle's failure to follow department policies described previously, his decision to pat plaintiffs down separately and while in rooms alone with them at the LEC, and the fact he patted the front of Wyatt's legs when it was apparent she did not have any front pockets. This is a meager basis on which to infer improper motive. However, as noted previously, an officer's motivation in conducting a search has little to do with the Fourth Amendment issue. Objective reasonableness is determined without re-

gard to "underlying intent or motivation." *Graham,* 490 U.S. at 397, 109 S.Ct. 1865; *see Whren,* 517 U.S. at 812–13, 116 S.Ct. 1769; *Scott v. United States,* 436 U.S. 128, 138, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978) ("[s]ubjective intent alone ... does not make otherwise lawful conduct illegal or unconstitutional"); *Winters v. Adams,* 254 F.3d 758, 765 n. 11 (8th Cir.2001). It follows that the charge of sexual assault in the circumstances of this case does not create a fact issue about the reasonableness of the search conducted by Slagle.

 If plaintiffs' claims were considered under the Due Process Clause of the Fourteenth Amendment, the result would be the same. The threshold question when substantive due process is looked to is whether the behavior of the state actor in question was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Lewis,* 523 U.S. at 847–48 n. 8, 118 S.Ct. 1708. Substantive due process comes into play only at the far end of the "culpability spectrum." *Id.* at 849, 118 S.Ct. 1708. The circumstances of the pat-downs described by plaintiffs are far short of reasonably permitting a finding that Slagle's conduct reached the extreme required to make out a due process violation.

*Qualified Immunity*

 Even if the summary judgment record presented a colorable claim that Slagle's pat-down searches violated plaintiffs' Fourth Amendment right to be free from unreasonable searches and seizures, Slagle would be entitled to qualified immunity. There is no dispute about predicate facts, the Court has accepted plaintiffs' description of the searches. Plaintiffs have not demonstrated they had a clearly established Fourth Amendment right to be searched by a person of their own gender or in a different manner. They refer only

to *Watson v. Jones,* 980 F.2d 1165 (8th Cir.1992), but that case involved allegations of "prolonged rubbing and fondling of the genital and anus area" during frequent prison pat-down searches by a female prison guard of two male inmates. *Id.* at 1166. Plaintiffs make no similar allegations in this case. Also, in view of the case authority upholding the constitutionality of opposite sex pat-down searches in the prison context, and the absence of case authority suggesting that the opposite sex pat-down search of an arrestee is per se unconstitutional, there is no basis to conclude that a reasonable police officer would have known that the pat-down search described by plaintiffs violated plaintiffs' Fourth Amendment rights. *See Harrison,* 284 F.3d at 866–67; *Doe v. Gooden,* 214 F.3d 952, 955 (8th Cir.2000).

*City of Jefferson/Taylor*

As Slagle has shown he is entitled to summary judgment, the defendant City and defendant Taylor are likewise entitled to summary judgment on the municipal and supervisory liability claims against them. *Turpin,* 262 F.3d at 784. There is no need to examine the other issues these defendants raise concerning municipal and supervisory liability for Slagle's conduct.

## IV.

That Slagle's conduct did not reach so far as to violate any constitutional right of the plaintiffs is not a commendation of his overall behavior if plaintiffs' version of events is believed. They describe Slagle as rude and bullying throughout the episode. Plaintiffs were understandably upset. Many parents, while not excusing the conduct which led to the arrests, would be angered at the treatment of their teenage children described in the record. The Constitution, however, does not regulate the professional standards of local policemen. It does not very often concern itself with verbal abuse, rude or boorish conduct by officials. *See Lewis v. McDade,* 250 F.3d 1320, 1321 (11th Cir.2001); *Doe,* 214 F.3d at 955. It is for the citizens of Jefferson, through their elected officials and police department, to correct such conduct. Insofar as the constitutional issues are concerned, the fact is that Ms. Wyatt and Ms. Garnett involved themselves in activities which led to their lawful arrest and, once arrested, they were subject to the usual incidents which accompany status as an arrestee, including a search by the arresting officer.

As there are no genuine issues of material fact and defendants have shown they are entitled to judgment as a matter of law on plaintiffs' claimed violations of their Fourth and Fourteenth Amendment rights, defendants' motions for summary judgment are granted. The Clerk shall enter judgment dismissing the Complaint.

IT IS SO ORDERED.